NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0197n.06
Filed: December 30, 2004

**No. 03-3086**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LINDITA GJONAJ, KLAUDIA GJONAJ, and JORGO GJONAJ, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS |
| JOHN ASHCROFT, United States Attorney General, | ) ) ) | |
| Respondent. | ) ) | |

Before: SILER, SUTTON, and FARRIS, Circuit Judges.[*]

SUTTON, Circuit Judge. Lindita Gjonaj challenges an order of removal against her and her two children, claiming that the Board of Immigration Appeals erred in making an adverse credibility determination regarding her application and testimony. Because substantial evidence supports the Board's finding and because no other evidence compels a contrary conclusion on the removal issue, we deny the petition for review.

---

[*] The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

I.

A native and citizen of Albania, Gjonaj entered the United States in April 1999 with her two minor children, Klaudia and Jorgo, without being admitted or paroled by an immigration officer. She fled Albania, she later testified, to avoid persecution for being an active member of the Democratic party and an election observer in 1996 and 1997. In her written application for asylum, Gjonaj asserted that her parents had been persecuted for opposing Albania's former communist regime and had been interned at a labor camp where her mother eventually died. In October 1996 and June 1997, her application continues, the former communists threatened to kill her and her husband. On April 28, 1998, secret police detained her in prison for two days, interrogated her, beat her twice and threatened to kill her. As a result of these beatings, she miscarried during her fourth month of pregnancy. Also, beginning on March 8, 1999, she was detained for three days in prison again, where she was interrogated, sexually harassed and "threatened to be sold at Italy's public houses if [she] continue[d] [her] political activity." JA 100.

After being served with a Notice to Appear for being present in the United States illegally, she requested asylum, withholding of removal and protection under the Convention against Torture, 8 C.F.R. § 208.13(c)(1), on behalf of herself and her children. At her hearings, Gjonaj's testimony differed from the assertions in her written application. She made no mention of the death threats she and her husband received in 1996 and 1997. When cross-examined about her alleged arrest on April 28, she testified that she was certain that the arrest had occurred on March 28 and that her application contained the wrong date, but later changed her testimony to say that the arrest occurred

on April 28. When asked to explain why her birth certificate had her married name on it, Gjonaj was unable to give any explanation. And in response to questions about her and her children's birth certificates, Gjonaj testified that she received them from her husband but did not know when he obtained them.

The immigration judge (IJ) denied Gjonaj's requests and ordered her and her children removed to Albania. In the process of reaching this decision, the immigration judge declined to consider untranslated documents submitted by Gjonaj. Addressing other documents purportedly from the government of Albania, the immigration judge noted that Gjonaj "has submitted no evidence from which this Court can [adduce] that these are reliable or even issued by officials in the country of Albania." JA 32. In view of past experiences with fraudulent documents purportedly issued by the Albanian government, the immigration judge concluded that "the lack of authentication in this case seriously undercuts any weight that this Court can attach to these documents." *Id.* Lastly, the immigration judge noted that although Gjonaj's husband was present at the arrest in April 1998 and entered the United States in time to testify, her husband did not testify to corroborate her testimony. Taking all of these factors into account, the immigration judge concluded that Gjonaj's testimony was not credible and was uncorroborated.

The Board of Immigration Appeals affirmed the immigration judge's denial of Gjonaj's request. In doing so, it cited her inconsistent testimony as to the date of her first arrest, her failure to mention death threats purportedly made against her and her husband and her failure to authenticate any of her documentation.

II.

Our review in this area is circumscribed. Contrary to Gjonaj's contention, we do not give de novo review to decisions of the Board of Immigration Appeals. We must defer to the Board when its factual findings, such as determinations of credibility, are "supported by reasonable, substantial, and probative evidence on the record considered as a whole," *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)), and indeed we may not reverse factual findings of the Board unless the evidence compels a contrary result, 8 U.S.C. § 1252(b)(4)(B) (decreeing that the Board's "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"); *see also Elias-Zacarias*, 502 U.S. at 481 n.1.

An applicant for asylum bears the burden of demonstrating that she is a refugee within the meaning of the Immigration and Nationality Act, namely that she is unwilling to return to her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Here, the Board of Immigration Appeals found that Gjonaj failed to carry that burden because her testimony was not credible.

Substantial evidence supports this credibility determination. Gjonaj contended in her written application that former communists threatened her life (and that of her husband) twice. While a reasonable adjudicator could expect such threats to be uniquely memorable, Gjonaj neglected to

mention them during her oral testimony. This omission also conflicts with her claim that these events caused her to fear future persecution. And during her testimony, Gjonaj repudiated the April 28 date she had asserted in writing, saying the date in the application was a mistake: "I don't know how but I am sure that I got arrested on March 28th of 1998. It is [ ] a mistake, I [was] arrested on March 28th of 1998." JA 73. Yet later during the same day's testimony, she again asserted that her first arrest occurred in April. The IJ and Board may fairly consider the fact that a witness's testimony tacks back and forth when making a credibility finding.

Since her testimony lacked the credibility to support her application by itself, Gjonaj was entitled to try to corroborate her testimony. *See* 8 C.F.R. § 208.13 ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."). But Gjonaj's efforts to corroborate her testimony accentuated rather than alleviated these credibility concerns. Her birth certificate, for example, recorded her married name, a demonstrably questionable fact for which she had no explanation. And while she suggests in her brief that documents "may be authenticated in immigration proceedings through any 'recognized procedure, such as those required by INS regulations or by the Federal Rules of Civil Procedure,'" Gjonaj Br. at 13 (quoting *Khan v. INS*, 237 F.3d 1143, 1144 (9th Cir. 2001)), she took no steps to authenticate the documents under any of those avenues. Making matters worse, she testified that she did not personally obtain the documents from the government or know when her husband did. Lastly, Gjonaj could have corroborated her testimony by having her husband testify, at least as to her first arrest. Because he allegedly bribed the prosecutor for her release, he would have had some

knowledge of the incident and indeed he was available to testify: as the record shows, he waited outside the hearing room during the hearing. For reasons yet to be explained, however, Gjonaj presented no testimony from her husband supporting her claims. In short, while Gjonaj bears the burden of demonstrating persecution or a well-founded fear of future persecution, she failed to present credible evidence capable of carrying that burden.

In response, Gjonaj notes that no one asked her about the death threats during the hearing. Perhaps not. But the fact remains that she bore the burden of proof on this issue and (for whatever reason) did not testify about these events. She also argues that the immigration judge incorrectly excluded her documents based on the submission of fraudulent documents by other Albanian applicants in other cases. In one sense, she is correct; in another, she is not. No doubt, it would be inappropriate for an immigration judge to make an across-the-board ruling that because documents from a certain country were frequently fraudulent, the judge need not examine the authenticity of the documents independently. But here the immigration judge specifically excluded the documents not because documents from Albania were frequently fraudulent, but because "the lack of authentication *in this case* seriously undercuts any weight that this Court can attach to these documents." JA 32 (emphasis added).

Since substantial evidence supports the Board's determination that Gjonaj is not eligible for asylum, it follows that she cannot meet the more stringent standard for withholding of removal. *Koliada v. INS*, 259 F.3d 482, 489 (6th Cir. 2001). Likewise, she is unable to show that she is

No. 03-3086
*Gjonaj v. Ashcroft*

entitled to protection under the Convention against Torture. *Castellano-Chacon v. INS*, 341 F.3d

533, 552 (6th Cir. 2003).

III.

For these reasons, we deny the petition for review.